UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN GUGINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-01319 |
| | ) |
| ERIE COUNTY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT ERIE COUNTY'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 18)

Plaintiff John Gugino brings this suit against Defendant Erie County (the "County") for events arising out of his employment as an Erie County Sheriff's Deputy, alleging a violation of his equal protection rights (Count I) and a violation of his due process rights (Count II) brought pursuant to 42 U.S.C. § 1983 as well as retaliation in violation of the Family Medical Leave Act of 1993 (the "FMLA") brought pursuant to 29 U.S.C. § 2615 (Count III). He seeks past lost wages and benefits, monetary damages relating to his suspension, and reinstatement to his former position.

The County moved for summary judgment on September 12, 2023, (Doc. 18), and Plaintiff opposed the motion on January 10, 2024, (Doc. 26).[1] The County filed a reply on January 17, 2024, (Doc. 27), at which point the court took the pending motion under advisement.

Plaintiff is represented by Richard Joseph Perry, Jr., Esq., and Lindy Korn, Esq. The County is represented by Morgann K. Obrochta, Esq.

---

[1] The court granted Plaintiff's motion for an extension of time to file his memorandum in opposition. (Doc. 28.)

## I.   Whether to Consider Plaintiff's Response to the County's Statement of Undisputed Material Facts.

In Plaintiff's response to the County's statement of undisputed material facts, he submits additional undisputed facts, asserts that certain facts in the County's statement are not material or no longer material, and argues that the County cannot rely on the affidavits of its own employees as evidence to establish a fact is undisputed. The County asks the court to deem its statement of facts admitted because Plaintiff has failed to properly controvert them by responding with improper legal argument, failing to cite evidence that challenged facts are genuinely disputed, and alleging new facts in his opposition papers.[2]

Under Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" with citations to the record. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Declarations that are not based on personal knowledge or that contain inadmissible hearsay or conclusory statements do not "create a genuine issue for trial." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the

---

[2] In his opposition, Plaintiff claims that the County terminated his employment without a hearing and that his termination was vacated in a New York state court, however, he has not amended his Complaint to assert this allegation. *See Irizarry v. Lily Transp. Corp.*, 266 F. Supp. 3d 600, 604 (D. Conn. 2017) (declining to consider "new allegations and claims" raised in opposition to motion for summary judgment because "[a] complaint cannot be amended merely by raising new facts and theories in . . . opposition papers[]") (internal quotation marks and citation omitted); *see also Gonzalez v. Dist. Council 37, AFSCME, AFL-CIO, SSEU Loc. 371*, 843 F. App'x 361, 363 (2d Cir. 2021) (summary order) (concluding "district court did not err in declining to address" plaintiff's claim that his termination was invalid "since the claim turned on an allegation not made in the amended complaint and was raised for the first time in opposition to the [defendant's] motion for summary judgment[]").

> facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Pursuant to Western District of New York Local Rule 56, a party moving for summary judgment must file "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried[,]" including "citation to admissible evidence or to evidence that can be presented in admissible form at trial[.]" Loc. R. Civ. P. 56(a)(1). "Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Loc. R. Civ. P. 56(a)(2). A nonmoving party may also include "additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." *Id.*

To the extent Plaintiff contends the County's facts are "not material," legal argument cannot take the place of record references to evidence that places a fact in dispute. *See Checksfield v. Internal Revenue Serv.*, 2024 WL 21549, at *2 (N.D.N.Y. Jan. 2, 2024) (explaining that "includ[ing] impermissible commentary, along with impermissible legal arguments[]" in a statement of facts is not permitted "regardless of whether the commentary is intended to assert a related fact, place in context or spin the asserted fact, or deny a perceived implication of an asserted fact[]") (internal quotation marks, footnotes, and citation omitted); *Moore v. Bitca*, 2020 WL 5821378, at *12 (D. Vt. Sept. 30, 2020) ("Legal arguments and varying interpretations of undisputed facts do not give rise to genuine issues of material fact that preclude summary judgment.") (citations omitted). Any facts opposed as "not material" are therefore considered undisputed for purposes of the County's motion.

Plaintiff argues that the court "can only consider evidence from [the County] that is uncontradicted, unimpeached and testified to by a disinterested witness[,]" and asks the court to disregard all facts exclusively supported by County employees' affidavits. (Doc.

3

26 at 4) (emphasis omitted). When reviewing the record for purposes of a motion for summary judgment, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)). Although a moving party may use affidavits in support of their statement of facts, *see* Fed. R. Civ. P. 56(c)(1)(A) (stating parties can cite to "affidavits or declarations[]"), "[i]f the credibility of the movant's witness is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied." *Knox v. County of Putnam*, 2012 WL 4462011, at *5 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks and citation omitted). This is because "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007)).

"That an 'interested witness' has testified regarding a certain issue, however, does not in and of itself raise a genuine issue of material fact." *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 693 (2d Cir. 2017) (summary order) (citation omitted). "If a party opposing summary judgment points only to evidence that *could* discredit a key witness's testimony, but does not present other evidence that actually contradicts the testimony at issue, the nonmovant will not be able to survive summary judgment solely by impeaching the witness." *Progressive Cas. Ins. Co. v. Monaco*, 2017 WL 2873051, at *8 (D. Conn. July 5, 2017) (emphasis supplied) (citations omitted). If, however, "a witness's credibility is broadly disputed, permitting a factfinder to question testimony that is not specifically rebutted by other evidence[,]" there is a genuine dispute and summary judgment is inappropriate. *Lugo v. City of New York*, 2021 WL 1884669, at *7 (E.D.N.Y. May 11, 2021).

Beyond a general allegation that the County's employees are "biased" in favor of their employer, (Doc. 26 at 4), Plaintiff does not proffer specific impeachment evidence.

4

Plaintiff has therefore failed to identify a disputed issue of fact based on credibility of the County's witnesses.

## II.    The Undisputed Facts.

At all relevant times, Plaintiff was an Erie County Sheriff's Deputy employed by the Sheriff of Erie County, Timothy B. Howard ("Sheriff Howard"), who served from 2005 through 2021. The Erie County Sheriff's Office (the "ECSO") employed Plaintiff as a public and an essential employee.

### A.    COVID-19 Policies and Exposure.

On March 21, 2020, the ECSO Correctional Health Division (the "CHD") issued a memorandum regarding the ECSO's COVID-19 exposure plan (the "Exposure Plan Memorandum") to all ECSO employees. The Exposure Plan Memorandum stated that essential personnel were "permitted to continue to work following potential exposure" to COVID-19 "provided they remain asymptomatic." (Doc. 18-9 at 5.) Employees who had close contact with an asymptomatic person who was exposed to COVID-19 but had not yet tested positive were "not considered exposed[.]" *Id.*

The Exposure Plan Memorandum provided that "[a]ll ECSO employees will continue to work after an exposure." *Id.* at 6. When an ECSO employee was exposed to COVID-19, he or she was required to notify his or her watch commander, who would forward the information to the CHD. The CHD was tasked with obtaining relevant information from the employee, assessing "the epidemiologic risk factor[,]" deciding "if a quarantine [wa]s required[,]" and maintaining "a log of all communication with employees." *Id.*

On June 27, 2020, the County promulgated a COVID-19 Policies and Procedures Manual (the "COVID-19 Manual"), which stated that, following close contact with a "confirmed COVID-19 case[,]" "[a]symptomatic, essential employees who are not able to work from home should continue to report to work so long as" they remain asymptomatic and follow testing, masking, and distancing guidelines outlined therein. *Id.* at 13 (emphasis omitted). A close contact was defined as "any individual who was within six (6) feet of an infected person for at least ten (10) minutes during the contagious period[.]"

5

*Id.* According to the COVID-19 Manual, employees who were "unable to work onsite or from home due to COVID-19 quarantine, isolation, or symptoms while awaiting COVID-19 test results" were eligible for "up to two weeks of paid leave ('Quarantine Leave')[.]" (Doc. 18-9 at 17.)

Plaintiff was exposed to COVID-19 three times between March and July of 2020. In March 2020, he was secondarily exposed through his brother-in-law, who later tested negative for COVID-19. He was absent from work from March 17 through April 4. The County required Plaintiff to use his accrued sick leave during his leave. While working at the Erie County Holding Center, Plaintiff was again exposed to COVID-19 on July 17 and July 24 of 2020.

Plaintiff did not experience any symptoms and tested negative after each exposure. Plaintiff did not contact CHD to report his exposures and did not apply for Quarantine Leave pursuant to the COVID-19 Manual. He took FMLA leave on July 18, 2020.

**B.     Administrative Leave.**

On October 17, 2020, ECSO officers observed Plaintiff leaving the residence of two individuals with known criminal histories. They stopped Plaintiff's vehicle to execute a search warrant for his person, vehicle, and cell phone. During the execution of the search warrant, ECSO officers seized two containers of marijuana, one glass smoking pipe with burnt residue, and one plastic bag recovered from Plaintiff's wallet containing a white powder residue, which later tested positive for cocaine. Plaintiff was arrested and charged with criminal possession of a controlled substance in the fifth degree, unlawful possession of marijuana in the second degree, and operating a motor vehicle without an inspection certificate. Thereafter, Plaintiff provided a blood sample which tested positive for cocaine and marijuana and was charged with operating a motor vehicle while impaired by drugs. Plaintiff was charged with felony possession of cocaine. This charge was subsequently reduced to a misdemeanor based on the cocaine's weight.

As a result of his arrest, the ECSO placed Plaintiff on administrative leave without pay on October 19, 2020. Because Plaintiff is a member of the Teamsters Local 264, he was subject to a Collective Bargaining Agreement ("CBA") that covered, among other

6

things, work hours, promotions, demotions, leave, wages, benefits, discipline, and discharge. Pursuant to the CBA, discipline could "be imposed only for just cause." (Doc. 18-8 at 13.) The CBA provides: "In discipline involving infractions alleging criminal conduct, there shall be no limitations in the amount of suspension without pay prior to the case being litigated under the grievance procedure. Under the penal law, Article 10, Section 6, a crime is defined as a misdemeanor o[r] felony." *Id.* The CBA "constitute[d] the entire [a]greement between the parties" and "supersede[d] any and all personnel rules, regulations, [l]ocal [l]aws, or resolutions[.]" *Id.* at 14.

On May 10, 2022, Plaintiff pleaded guilty to criminal possession of a controlled substance in the seventh degree, a misdemeanor. All other charges against him were dismissed. Prior to Plaintiff's arrest and guilty plea, he had been disciplined for employee misconduct on five occasions.

## C.    Leave Pursuant to the FMLA.

To care for his mother on an "as needed" basis, on April 6, 2020, Plaintiff applied for FMLA leave, and his application was approved by the County's risk manager on May 4, 2020. (Doc. 18-10 at 1.) Because the leave Plaintiff needed was unscheduled, it was "not possible to provide the hours, days, or weeks that w[ould] be counted against [his] FMLA entitlement at th[at] time." *Id.* at 4. Plaintiff was advised in writing that he was required to "substitute or use paid leave during [his] FMLA leave." *Id.*

Plaintiff's FMLA leave was deemed retroactive to April 7, 2020, the day following receipt of his application. Between April 7, 2020 and October 3, 2020, Plaintiff continued to take FMLA leave on an unpaid basis after his accrued paid leave ran out.

Plaintiff alleges that the County violated procedural due process by suspending him without pay following his arrest without first holding a hearing. He contends the County violated the FMLA by backdating his FMLA application, "[t]aking all of his sick leave[,]" and refusing to pay him for absences. (Doc. 1 at 7, ¶ 63.) He further asserts that ECSO officers fabricated evidence to obtain a search warrant, arrested Plaintiff, and suspended him without pay in retaliation for his taking FMLA leave.

7

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "'might affect the outcome of the suit under the governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (emphasis in original) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir.

---

2010) (citation omitted). If the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Anderson*, 477 U.S. at 251-52.

Not all disputed issues of fact preclude summary judgment. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## B. Whether Plaintiff's Complaint Must Be Dismissed for Failure to Name the Sheriff as a Defendant.

Because Plaintiff has not joined the Sheriff as a defendant, the County argues his complaint must be dismissed for failure to join a necessary party. Plaintiff counters that suit against the Sheriff in his official capacity constitutes suit against the ECSO, which is an administrative unit of the County and not a separate legal entity.[3]

### 1. Whether the Sheriff Has the Capacity to be Sued.

A suit against an officer in his or her official capacity is a suit against the entity which employs the officer. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. In an official capacity suit, the real party in interest is the governmental entity and not the named official." *Tanvir v. Tanzin*, 894 F.3d 449, 458-59 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020) (internal quotation marks, citation, and ellipses omitted).

"By contrast, individual capacity suits seek to impose individual liability upon a government officer for her actions under color of law." *Id.* at 459 (alterations adopted) (internal quotation marks and citation omitted). At least for claims against him in his individual capacity, Sheriff Howard and the County are not interchangeable, and the failure to join the former, if necessary under Rule 19, cannot be excused. *See Amato v.*

---

[3] Although Plaintiff contends the County should have raised this issue in a Rule 12(b)(7) motion to dismiss, failure to join a necessary party "'is sufficiently important that it can be raised at any stage of the proceedings[.]'" *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 383 (2d Cir. 2006) (quoting *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984)); *see also Seneca Nation v. Hochul*, 58 F.4th 664, 669 n.19 (2d Cir. 2023) (stating, as dicta, that the defendants could move for dismissal under Rule 19 "at summary judgment[]").

9

*City of Saratoga Springs*, 170 F.3d 311, 318 (2d Cir. 1999) ("[A] finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.").

A municipal entity's "[c]apacity to sue or be sued is determined" by "the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b)(3). Suit against the ECSO is suit against the County under New York law.[4] It is less clear whether a sheriff must be independently sued. A magistrate judge in the Second Circuit recently observed that "[i]t is unclear at this juncture whether [the p]laintiff's claims against Defendant Oneida County Sheriff in his official capacity[] should be deemed as claims against the County of Oneida or the Oneida County Sheriff's Department." *Polinski v. Oneida County Sheriff*, 2023 WL 2988753, at *5 n.3 (N.D.N.Y. Apr. 18, 2023), *report and recommendation adopted*, 2023 WL 3344060 (N.D.N.Y. May 10, 2023), *appeal dismissed*, 2023 WL 8357375 (2d Cir. Oct. 12, 2023).

Some New York courts have concluded that suit against a sheriff in his or her official capacity is a suit against the sheriff's office and thus a suit against the county. *See Miller v. County of Erie*, 2021 WL 4481195, at *6 (W.D.N.Y. Sept. 30, 2021) (concluding plaintiff's claims against sheriff in his official capacity were "coextensive" with plaintiff's claims against county); *LaFever v. Clarke*, 525 F. Supp. 3d 305, 338 (N.D.N.Y. 2021) ("To the extent that [the plaintiff] intended to sue [the sheriff] in his *official* capacity, the Supreme Court has explained that this kind of claim is 'to be treated as a suit against the entity'; *i.e.*, the [c]ounty itself.") (emphasis in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); *Green v. Harris*, 2018 WL 6004042,

---

[4] *See Prezioso v. County of Niagara*, 183 N.Y.S.3d 825, 830 (App. Div. 2023) ("[T]he Sheriff's Department does not have a legal identity separate from the County[.]") (citation omitted); *Abate v. County of Erie*, 151 N.Y.S.3d 291, 292 (App. Div. 2021) ("A sheriff's office has no legal identity separate from its corresponding county, and thus an action against the Sheriff's Office is, in effect, an action against the corresponding county itself[.]") (alterations adopted) (internal quotation marks and citation omitted); *see also Forrest v. County of Greene*, 676 F. Supp. 3d 69, 75 (N.D.N.Y. 2023) ("[A] sheriff's department or a police department is an administrative arm of the municipal corporation and does not have a separate identity from the municipality.") (citations omitted).

10

at *5 (W.D.N.Y. June 7, 2018) ("In suing [Sheriff] Howard in his official capacity as
Sheriff of Erie County, plaintiff is[] actually suing the entity of the [ECSO]."). At least
one court, however, has concluded that suit against a sheriff is not a suit against the
county because a sheriff holds an independent office with the capacity to be sued based
on "the New York State Constitution, the New York County Law, and the relationship of
the [s]heriff to the [c]ounty." *See DiJoseph v. Erie County*, 2020 WL 4194136, at *7
(W.D.N.Y. July 21, 2020).

        Historically, a sheriff in New York has been considered "an independent officer"
separate from the county which he or she serves. *Ulster County v. CSEA Unit of Ulster
Cnty. Sheriff's Dep't, Ulster Cnty. CSEA Chapter*, 326 N.Y.S.2d 706, 710 (App. Div.
1971); *see also Ball v. Monroe County*, 415 N.Y.S.2d 609, 612 (Sup. Ct. 1979)
("Although the sheriff is paid by the county and, for certain purposes, has been held to be
a 'county officer[,]' . . . [t]raditionally, the sheriff has not been an officer of the county
but rather an officer of the court and he has historically been treated as an independent
agent[.]") (citations omitted). Although a sheriff is elected to serve a county and may
perform duties prescribed by the county's legislative body, a sheriff may have additional
duties as well. *See* N.Y. County Law § 650(1) (mandating that sheriff "shall perform the
duties prescribed by law as an officer of the court and conservator of the peace within the
county[]"); *Jeffes v. Barnes*, 208 F.3d 49, 58 (2d Cir. 2000) ("In addition to the statutory
powers and duties which a Sheriff now has[,] he also has those duties which were fixed at
common law and which have not been abrogated by statute.") (internal quotation marks
and citation omitted) (alteration in original).

        Under New York law, a sheriff "may appoint as many regular deputy sheriffs as
he may deem proper, but not exceeding one for every three thousand inhabitants of the
county." N.Y. County Law § 652(2). A county, however, may "change the method of
appointment or promotion of deputy sheriffs by a duly adopted local law," enter a
"collective bargaining agreement" with "an employee organization representing deputy
sheriffs," and "contract with respect to an alternate method of appointment or promotion
of deputy sheriffs." *Id.* § 652-a.2. Under Erie County law, a sheriff "may appoint such

11

deputies . . . as she or he deems necessary[,]" "within limits of the [County's] appropriations therefor[][,]" and deputies "serve during the pleasure of the sheriff." Erie County Administrative Code § 21.03. The sheriff's authority regarding deputies' employment is not limitless because deputies are members of the civil service. *See* Erie County Charter § 2103 (providing civil service classifications for all "employees of the [ECSO]").[5] The CBA further limited the sheriff's discretion with regard to deputies' employment because it governed various aspects of Plaintiff's employment including work hours, promotions, demotions, leave, wages, benefits, discipline, and discharge.

Although the sheriff may act as an officer of the court or of the state at times, this does not alter the conclusion that a suit against Sheriff Howard in his official capacity is a suit against the entity for which he is an agent. *Cf. Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (explaining that official capacity suit against New York district attorney was against the state when he acted as an agent of the state and was against the municipality when he acted as an agent of the municipality); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating official capacity suits are "only another way of pleading an action against an entity of which an officer is an agent[]"). The County's argument that the sheriff was not acting as its agent with regard to Plaintiff's employment is not supported by applicable law. *See* N.Y. County Law § 650(1) (stating sheriff "shall perform such additional and related duties as may be prescribed by law and *directed by* the board of supervisors or the county legislature[]") (emphasis supplied). Suit against Sheriff Howard in his official capacity in this case would therefore be a suit against the

---

[5] The court takes judicial notice of the Erie County Charter and the Erie County Code which are cited in the County's memorandum. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Fernandes v. Moran*, 2018 WL 2103206, at *3 (E.D.N.Y. May 7, 2018) (collecting cases of courts taking judicial notice of municipal laws).

County and joinder would be redundant.[6] There is no failure to join under Fed. R. Civ. P.
19 on this basis.

### 2.    Whether Sheriff Howard Is a Necessary Party.

The County argues that Sheriff Howard is a necessary party because he was
Plaintiff's employer and is therefore responsible for the adverse employment actions
alleged in Plaintiff's complaint. Because the statute of limitations for Plaintiff's § 1983
claim is three years, *see Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d
Cir. 2023) ("[I]n New York, the statute of limitations for [§] 1983 claims is New York's
general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is
three years."), the County contends Sheriff Howard cannot be joined at this time and
Plaintiff's claims against the County must be dismissed. Plaintiff counters that dismissal
would not effectuate substantial justice because the County purposefully delayed raising
this issue until the statute of limitations had run.[7]

"In determining whether an action should be dismissed for nonjoinder, the
court . . . must initially determine whether the party should be joined as a 'necessary
party' under Rule 19(a)." *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d
351, 356 (2d Cir. 2015) (quoting *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.,
Inc.*, 102 F.3d 677, 681 (2d Cir. 1996) (omission in original)). Under Rule 19, a party is
necessary if:

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or

---

[6] *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring
official[ ]capacity actions against local government officials, for under *Monell*, . . . local
government units can be sued directly for damages and injunctive or declaratory relief."); *see
also Hafer v. Melo*, 502 U.S. 21, 26 (1991) (explaining that "official capacity" suits refer to "the
capacity in which the . . . officer is sued, not the capacity in which the officer inflicts the alleged
injury[]").

[7] The parties do not dispute that any claim against Sheriff Howard is time-barred and do not
address whether Plaintiff would be able to amend his complaint to bring a claim against Sheriff
Howard under the relation-back doctrine. *See* Fed. R. Civ. P. 15(c) (discussing when
amendments to pleadings relate back).

(B) that person claims an interest relating to the subject of the action and is
so situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability
> to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of
> incurring double, multiple, or otherwise inconsistent
> obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Whether the court can grant "complete relief" under Rule 19(a)(1)(A) focuses on
"*those already parties*." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 385
(2d Cir. 2006) (emphasis in original) (internal quotation marks and citation omitted).
Necessary parties under Rule 19(a)(1)(B) are "those [third] parties whose ability to
protect their interests would be impaired because of that [third] party's absence from the
litigation." *Id.* at 387 (emphasis omitted).

If a necessary party cannot be joined, "the court must determine whether, in equity
and good conscience, the action should proceed among the existing parties or should be
dismissed." Fed. R. Civ. P. 19(b). The court must consider:

(1) the extent to which a judgment rendered in the person's absence might
prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

> (A) protective provisions in the judgment;

> (B) shaping the relief; or

> (C) other measures;

(3) whether a judgment rendered in the person's absence would be
adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were
dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

In Sheriff Howard's absence, Plaintiff can obtain complete relief against the
County for its own allegedly unconstitutional acts pursuant to § 1983, *see Nassau &
Suffolk Cnty. Taxi Owners Ass'n v. State*, 336 F. Supp. 3d 50, 73 (E.D.N.Y. 2018)
(concluding absence of third parties did not inhibit court's ability to afford complete

14

relief among parties where claims only implicated liability of party already joined as defendant), but the County cannot be held vicariously liable for Sheriff Howard's acts or omissions. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended*, (Feb. 24, 2016) ("[V]icarious liability is inapplicable to § 1983 suits[.]") (internal quotation marks, ellipses, and citation omitted); *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (explaining that "municipalities are responsible only for their own illegal acts[]") (internal quotation marks and citation omitted).

Because Sheriff Howard has not claimed an interest in this litigation, the requirements of Rule 19(a)(1)(B) have not been satisfied.[8] Nor has the County established that, as a practical matter, Sheriff Howard's interests would be impaired by continuing the suit in his absence. Although Sheriff Howard could arguably be prejudiced by an assessment of the legality of his actions in his absence, he is protected from suit and liability by the statute of limitations. *See* Fed. R. Civ. P. 19(a)(1)(B) (stating non-party is necessary only where (1) "as a *practical matter*" non-party cannot protect their interests or (2) non-party would be subject to "a *substantial risk* of incurring double, multiple, or otherwise inconsistent obligations) (emphasis supplied). Sheriff Howard in his individual capacity is therefore not a necessary party for Plaintiff's § 1983 claims against the County.

For the reasons stated above, the court DENIES the County's request to dismiss this action for failure to join a necessary party.

## C.    Whether the Court Should Grant the County Summary Judgment on Plaintiff's Equal Protection Claim (Count I).

Because "a 'class-of-one' theory of equal protection has no place in the public employment context[,]" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594 (2008), Plaintiff has withdrawn his equal protection claim. That claim is therefore DISMISSED.

---

[8] *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (explaining that absent party must "claim an interest[]" in litigation for Rule 19(a)(1)(B) to apply) (internal quotation marks and citation omitted); *see also Camali TV, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2024 WL 22742, at *4 (E.D.N.Y. Jan. 2, 2024), *appeal dismissed*, (2d Cir. Mar. 27, 2024) (concluding nonparty did "not meet the criteria for a necessary party described in Rule 19(a)(1)(B)[]" because nonparty did "not appear[] to assert that it ha[d] any interest whatsoever[]").

## D.   Whether the Court Should Grant Summary Judgment on Plaintiff's Procedural Due Process Claim (Count II).

The County argues that Plaintiff's due process claim fails as a matter of law because Sheriff Howard rather than the County suspended him without pay and because he has not established that his suspension was the result of an official municipal policy. The County further asserts that Plaintiff was not entitled to a hearing before his suspension without pay under controlling United States Supreme Court precedent. Plaintiff counters that his suspension was an official municipal action and he was entitled to a pre-suspension hearing.

42 U.S.C. § 1983 "is not itself a source of substantive rights" but provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A claimant must establish the person who committed the violation was acting "under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (internal quotation marks omitted) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). He or she also "must p[rove] that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676) (alteration in original).

The parties do not dispute that Sheriff Howard acted at all times under the color of New York law. In addition, it is undisputed that Sheriff Howard was personally involved in disciplining Plaintiff. The County, however, is not liable for Sheriff Howard's actions under a theory of *respondeat superior*. *See Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (stating that municipality is "responsible only for [its] *own* illegal acts" and is "not vicariously liable under § 1983 for [its] employees' actions[]") (internal quotation marks and citations omitted) (emphasis in original); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold

16

municipalities liable under a theory of *respondeat superior*.") (citations omitted). Instead, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), cabins a municipality's liability under 42 U.S.C. § 1983 for its employees' unconstitutional acts to only those instances when "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). In other words, "it is [only] when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Coon v. Town of Springfield*, 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Monell*, 436 U.S. at 694)).

A municipality may be liable under *Monell* "for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (plurality opinion); *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives[.]"). Even then, however, "a plaintiff must demonstrate that through its *deliberate* conduct, the municipality was the moving force behind the injury alleged[.]" *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97-98 (2d Cir. 2020) (internal quotation marks and citations omitted) (emphasis in original).

To establish a *Monell* claim, a plaintiff must prove: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (internal quotation marks omitted)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). As the Second Circuit has observed,

> The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread

17

practice that amounts to a custom of which policymakers must have been
aware; or (4) a constitutional violation resulting from policymakers' failure
to train municipal employees[.]

*Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (alterations
adopted) (internal quotation marks and citations omitted).

Although the County contends that Plaintiff has failed to allege a municipal
policy, it negotiated and signed the CBA which governs disciplinary actions taken against
deputy sheriffs like Plaintiff. The CBA requires written notice of discipline containing
"the reasons for such discipline and the penalty imposed[]" to be "served personally or by
registered or certified mail upon" the disciplined employee. (Doc. 18-8 at 13.) It does not
expressly require a pre-suspension hearing and permits unlimited "suspension without
pay prior to the case being litigated under the grievance procedure[]" when the case
involves discipline for "infractions alleging criminal conduct[.]" *Id.* By signing the CBA,
the County adopted the practice of suspending deputy sheriffs charged with a crime
without pay before holding a disciplinary hearing. *See Kasper v. City of Middletown*, 352
F. Supp. 2d 216, 235 (D. Conn. 2005) (concluding collective bargaining agreement
between municipality and union could qualify as official municipal policy because
municipality "signed and adopted the provisions of the agreement[]"). The County's
motion for summary judgment based on Plaintiff's alleged failure to identify an official
municipal policy is therefore DENIED.

### 1. Whether Plaintiff Was Entitled to a Pre-Suspension Hearing.

"The Due Process Clause does not protect against all deprivations of
constitutionally protected interests in life, liberty, or property, 'only against deprivations
without due process of law.'" *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458,
464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). Courts must
"examine procedural due process questions in two steps: the first asks whether there
exists a liberty or property interest which has been interfered with by the State," and "the
second examines whether the procedures attendant upon that deprivation were
constitutionally sufficient[.]" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)
(citations omitted).

18

"To state a cause of action under the due process clause, a plaintiff must show that [he or] she has a property interest, created by state law, in the employment or the benefit that was removed." *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996). "[A] property interest in employment can be created by local ordinance or by implied contract. In either case, the sufficiency of the claim of entitlement rests on state law." *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 608 (2d Cir. 1983) (citation omitted). Plaintiff contends he had a property interest in his continued employment as a deputy sheriff. While "public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process," *Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997), those whose continued employment is subject under state law to "the unfettered discretion" of their employers have "absolutely no possible claim of entitlement to" their positions. *Bd. of Regents v. Roth*, 408 U.S. 564, 567, 578 (1972); *see also Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) ("An at-will government employee may be terminated for cause or for no cause whatsoever.").

Although the Erie County Code provides that deputy sheriffs "shall serve during the pleasure of the sheriff[,]" Erie County Code § 21.03(1)(4), the County does not contend that Plaintiff lacked a property interest in his continued employment. This is consistent with the CBA, which permits discipline and discharge only "for cause." *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (explaining that procedural due process protections apply to public employees who may only be terminated or suspended without pay "for cause"). The County, however, points out that Plaintiff was not entitled to a hearing prior to his suspension without pay under the CBA. *See* Doc. 18-8 at 13 ("In discipline involving infractions alleging criminal conduct, there shall be no limitations in the amount of suspension without pay prior to the case being litigated under the grievance procedure."). Plaintiff does not cite any evidence to the contrary.

"Due process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as some form of hearing is provided before an individual is finally deprived of the property interest." *Nnebe v. Daus* (*Nnebe I*), 644 F.3d

19

147, 158 (2d Cir. 2011) (alterations adopted) (emphasis in original) (internal quotation marks and citation omitted). Accordingly, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Although requiring a pre-deprivation hearing is the "general rule[,]" *Nnebe I*, 644 F.3d at 158 (internal quotation marks and citation omitted), "[t]he 'timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved.'" *Krimstock v. Kelly*, 306 F.3d 40, 51-52 (2d Cir. 2002) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)). "[A]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted may justify postponing the opportunity to be heard until after the initial deprivation." *Strong v. Bd. of Educ.*, 902 F.2d 208, 212 (2d Cir. 1990); *see also Gilbert*, 520 U.S. at 930 ("[W]here a State must act quickly, or where it would be impractical to provide pre[-]deprivation process, post[-]deprivation process satisfies the requirements of the Due Process Clause.").

To assess what process was due, courts consider "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." *O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The "ultimate conclusion" depends on "the full set of pre- and post-deprivation procedures available[,]" however, "courts often analyze pre- and post-deprivation procedures separately." *Id.*

When a person's "livelihood" is deprived, the private interest at stake is "enormous[.]" *Nnebe v. Daus* (*Nnebe II*), 931 F.3d 66, 83-84 (2d Cir. 2019) (internal quotation marks and citations omitted); *see also Spinelli v. City of New York*, 579 F.3d 160, 171 (2d Cir. 2009) ("The Supreme Court has 'repeatedly recognized the severity of depriving someone of his or her livelihood.'") (quoting *FDIC v. Mallen*, 486 U.S. 230, 243 (1988)). To determine the strength of the private interest, courts also consider "the length and finality of the deprivation[.]" *Gilbert*, 520 U.S. at 932 (internal quotation

marks and emphasis omitted). In the context of a suspension, concerns regarding the deprivation of a plaintiff's livelihood are mitigated "[s]o long as the suspended employee receives a sufficiently prompt post[-]suspension hearing[.]" *Id.* Plaintiff had a substantial interest in his employment that he was deprived of when he was suspended without pay, even if this deprivation was short of a permanent termination.

Because "the purpose of any pre-suspension hearing [is] to assure that there are reasonable grounds to support the suspension without pay[,]" *Id.* at 933 (emphasis omitted), the pendency of felony criminal charges mitigates the risk of an erroneous deprivation because "the arrest and the filing of charges[]" must be supported by probable cause. *Id.* at 934. After a search warrant was obtained for Plaintiff's person, vehicle, and cell phone, he was arrested on both felony and misdemeanor charges. Formal charges, like those against Plaintiff, ensure "that the state employer's decision to suspend the employee is not baseless or unwarranted[]" because "an independent third party has determined that there is probable cause to believe the employee committed a serious crime." *Id.* (internal quotation marks omitted).

Although the felony charge against Plaintiff was later reduced to a misdemeanor, this does not alter the nature of the pending charge when Plaintiff was suspended without pay. There is "a significant [governmental] interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Id.* at 932. For law enforcement officers, the County's interest in protecting the public and preserving public trust are also implicated for serious misdemeanors with public safety implications. Where a government entity is tasked with "ensuring the safety" of the public and "maintaining the public's trust[,]" "an arrest for a felony or serious misdemeanor creates a strong government interest in ensuring that the public is protected in the short term." *Nnebe I*, 644 F.3d at 159. As one of Plaintiff's misdemeanor charges involved the alleged illegal possession of controlled substances, Plaintiff's arrest on this charge in light of his employment as a law enforcement officer created a significant public safety interest in his immediate suspension pending grievance procedures.

Case 1:21-cv-01319-CCR   Document 31   Filed 07/18/24   Page 22 of 31

In *Gilbert v. Homar*, the United States Supreme Court addressed whether a university police officer arrested on felony drug charges, which were later dismissed, was denied procedural due process when he was suspended without pay "effective immediately" pending an investigation. 520 U.S. at 927. Approximately four weeks after his arrest, the university police officer was demoted and provided back pay for the duration of his suspension commensurate with his new position. The Court recognized that "where a State must act quickly, or where it would be impractical to provide pre[-]deprivation process, post[-]deprivation process satisfies the requirements of the Due Process Clause." *Id.* at 930. Balancing the *Mathews* factors, the Court held the university police officer was not entitled to a pre-suspension hearing.

Under *Gilbert*, although Plaintiff's interest in his employment and salary was substantial, the County and Sheriff Howard had a stronger interest in preserving the integrity of the ECSO and maintaining the public's trust in its law enforcement officers. Sheriff Howard had incentive to act quickly once Plaintiff was charged with a felony for possession of a controlled substance, and it would have been impractical to await the outcome of criminal proceedings, which may take years, before suspending Plaintiff without pay. Under the circumstances, Plaintiff has failed to establish he was entitled to a hearing prior to his suspension.

Even when a pre-deprivation hearing is not required, the absence of a pre-deprivation hearing combined with inadequate post-deprivation proceedings may deprive the plaintiff of due process. "[A]lthough notice and a pre-deprivation hearing are generally required, in certain circumstances, the lack of such pre-deprivation process will not offend the constitutional guarantee of due process, *provided* there is sufficient post-deprivation process." *Spinelli*, 579 F.3d at 170 (alterations adopted) (emphasis supplied) (internal quotation marks and citation omitted); *see also Gilbert*, 520 U.S. at 935-36 (remanding case for consideration of whether university police officer was afforded due process regarding post-suspension procedures).

The court cannot determine whether Plaintiff was afforded procedural due process post-deprivation because the County has not yet addressed this issue or the length of

Plaintiff's suspension without pay.[9] Because the County has not satisfied its burden of demonstrating the undisputed material facts entitle it to judgment as a matter of law on Plaintiff's post-suspension procedural due process claim. For this reason, the County's motion for summary judgment is GRANTED on Plaintiff's pre-suspension claim and DENIED IN PART on his post-suspension claim. *See Gupta v. City of Norwalk*, 221 F. Supp. 2d 282, 293 (D. Conn. 2002) (denying defendant's motion for summary judgment where dispute remained regarding whether plaintiff was "given an opportunity to refute those charges either before or after the suspension was imposed").

## E.   Whether the Court Should Grant Summary Judgment on Plaintiff's FMLA Retaliation Claim (Count III).

The County contends that it is entitled to summary judgment on Plaintiff's FMLA retaliation claim because he has failed to adduce evidence of an adverse employment action taken against him. Plaintiff asserts there is a genuine dispute regarding the County's intent and motivations for various adverse employment actions culminating in his suspension without pay that cannot be decided on summary judgment.

The FMLA "provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or [his or] her family[]" and "creates a private right of action to seek both equitable relief and money damages against any employer" that "interfere[s] with, restrain[s], or den[ies] the exercise of FMLA rights." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165-66 (2d Cir. 2017) (internal quotation marks and citation omitted).

To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was

_____

[9] *See Panzella v. Sposato*, 863 F.3d 210, 218 n.9 (2d Cir. 2017), *as amended*, (July 18, 2017) (explaining that, even where post-deprivation procedures are adequate, "lengthy deprivation can be enough to violate the Fourteenth Amendment right to due process"); *Raja v. Burns*, 2019 WL 1118044, at *4 (E.D.N.Y. Mar. 11, 2019) (determining that analysis of pre-deprivation procedures "should include consideration of the available post-deprivation procedures[]"); *Ray v. City of New Haven*, 2018 WL 1141359, at *4 (D. Conn. Mar. 1, 2018) (declining to analyze pre-deprivation process "in a vacuum separate from the post-deprivation process" because the "'ultimate conclusion about procedural adequacy under *Mathews* turns on the full set of pre- and post-deprivation procedures available[]'") (quoting *O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005)).

23

> qualified for his position; 3) he suffered an adverse employment action; and
> 4) the adverse employment action occurred under circumstances giving rise
> to an inference of retaliatory intent.

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016) (alteration adopted)
(internal quotation marks and citation omitted). At the prima facie stage, the plaintiff's
burden of proof "is not onerous." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir.
2008) (internal quotation marks and citation omitted). "If the plaintiff makes out a prima
facie case, the defendant must demonstrate a legitimate, non[retaliatory] reason for its
actions; if the defendant does so, the plaintiff must then show that defendant's proffered
explanation is pretextual." *Graziadio*, 817 F.3d at 429 (citation omitted). The parties
agree that Plaintiff exercised rights protected under the FMLA and he was qualified for
his position.

In his Complaint, Plaintiff alleges the County adversely applied his sick leave to
certain days taken off work by retroactive designation of his FMLA leave and by refusing
to pay him for leave taken when he was quarantining after exposure to COVID-19.
Plaintiff further asserts the County pursued criminal charges against him resulting in his
suspension in retaliation for his taking FMLA leave.

"For purposes of the FMLA's anti-retaliation provision, a materially adverse
action is any action by the employer that is likely to dissuade a reasonable worker in the
plaintiff's position from exercising his legal rights." *Millea v. Metro-N. R.R. Co.*, 658
F.3d 154, 164 (2d Cir. 2011). "In determining whether conduct amounts to an adverse
employment action, the alleged acts of retaliation need to be considered both separately
and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in
gross as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal
quotation marks and citation omitted).

Although Plaintiff asserts the County retaliated against him by "[t]aking all of his
sick leave[,]" (Doc. 1 at 7, ¶ 63), the FMLA permits an employer to "require the
employee to substitute accrued paid leave for unpaid FMLA leave." 29 C.F.R.
§ 825.207(a). In such circumstances, "the paid leave provided by the employer . . . will

24

run concurrently with the unpaid FMLA leave." *Id.* This practice is therefore not an adverse employment action, although, conversely, preventing a plaintiff from "using his sick leave may constitute an adverse employment action." *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 429 (E.D.N.Y. 2014) (internal quotation marks and citation omitted) (collecting cases).

Retroactively designating FMLA leave, although permissible in some circumstances, may be an adverse employment action. *See* 29 C.F.R. § 825.301(d) (providing that employer may take longer than five business days to designate FMLA leave and may "retroactively designate leave as FMLA leave" only if doing so "does not cause harm or injury to the employee[]"). Plaintiff has not identified how retroactively designating his FMLA leave has caused him harm or injury. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (explaining that antiretaliation provisions "protect[] an individual not from all retaliation, but from retaliation that produces an injury or harm"). In the absence of any harm or injury, retroactive designation is not an adverse employment action. *See id.* at 68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms.") (emphasis in original).[10]

---

[10] Plaintiff brings an FMLA retaliation claim, however, courts have generally treated claims based on the retroactive designation of FMLA leave as interference claims. As the Second Circuit has explained:

> FMLA claims come in at least two varieties: interference and retaliation. In a general sense, an employee brings an "interference" claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA. "Retaliation" claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer. The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA.

*Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) (citations omitted). In the instant case, this distinction is not material because the retroactive designation of Plaintiff's leave without harm or injury cannot support either type of FMLA claim. *See Herron v. N.Y.C. Transit*, 2023 WL 4285816, at *2 (2d Cir. June 30, 2023) (summary order) (affirming grant of summary judgment to defendant on FMLA interference claim because plaintiff "ha[d] not adduced any evidence that this retroactive designation caused harm or injury to him[]")

Generally, "suspension without pay is sufficient to constitute an adverse employment action" even if plaintiff is reimbursed at a later date. *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). The Second Circuit, however, has observed that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006). Although the Second Circuit has only applied this principle in cases involving paid leave, there is no reason why it would not extend to Plaintiff's suspension pursuant to the CBA which contains a preexisting disciplinary policy. *See Joseph*, 465 F.3d at 91 (holding that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action[]"); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (concluding suspension with pay was not adverse employment action because employer acted "in a reasonable manner") (internal quotation marks omitted). Assuming *arguendo* that Plaintiff's suspension without pay was an adverse employment action, he must still demonstrate that there is evidence to support an inference of retaliatory intent.

When reviewing a motion for summary judgment, courts must determine "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 173 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (explaining that summary judgment is appropriate where circumstances did not "giv[e] rise to an inference of retaliatory intent[]"). Courts consider whether the protected activity and adverse employment action occurred in "very close" proximity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

---

(alteration adopted) (internal quotation marks and citation omitted); *Wilson v. CSX Transp., Inc.*, 2024 WL 1140898, at *6 (M.D. Fla. Mar. 15, 2024) (granting summary judgment in favor of employer on FMLA interference claim because "there [was] no prejudice to [the plaintiff] based on the retroactive designation of leave[]").

Plaintiff used his FMLA leave periodically during the approximately six months prior to his suspension without pay. His last use of FMLA leave occurred only sixteen days prior to his suspension. This temporal proximity weighs in favor of an inference of retaliation. *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (explaining that proximity is measured "as a matter of months, not years[]"). The intervening event of the arrest and charging of Plaintiff for felony and misdemeanor crimes, however, dispels this inference because "an intervening event between the protected activity and the adverse employment action . . . defeat[s] the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 336 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir. 2016), *as corrected*, (Jan. 29, 2016) (internal quotation marks and citation omitted); *see also Garcia v. Yonkers Bd. of Educ.*, 2018 WL 4007648, at *7 (S.D.N.Y. Aug. 21, 2018), *aff'd*, 803 F. App'x 441 (2d Cir. 2020) (same) (collecting cases); *Brooks v. City of Pekin*, 95 F.4th 533, 540 (7th Cir. 2024) ("[S]ignificant intervening events preclude an inference of causation [for Title VII retaliation claims].").

After being granted FMLA leave and taking time off when necessary for approximately six months without issues, Plaintiff was arrested on felony and misdemeanor charges following a judge's determination that there was probable cause to search Plaintiff's person, vehicle, and cell phone for evidence of crimes. It is undisputed that Plaintiff possessed cocaine and marijuana and tested positive for having used controlled substances which resulted in his pleading guilty to a misdemeanor. Notwithstanding the temporal proximity, the criminal charges against Plaintiff break the causal connection between his exercise of FMLA rights and his suspension without pay so that no rational juror could find evidence of retaliation.[11]

---

[11] *See Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir. 1998) (concluding "the total absence of evidence of retaliation offered by plaintiff [was] fatal to her case[]" where, between "her criticisms of police procedures and the date she was terminated[,]" there were "significant intervening events[,]" including that "plaintiff disobeyed [an] order to perform the strip searches, lied about it in [a] post-offense interview, and gave a false written statement about it[]"); *Lamitie v. Middlesex Hosp.*, 380 F. Supp. 3d 197, 209 (D. Conn. 2019) (deciding that "temporal

27

The County's refusals to permit Plaintiff to quarantine when he was asymptomatic and tested negative following his exposures to COVID-19 were taken pursuant to published policies. *See* Doc. 18-9 at 6 (requiring ECSO officers to "continue to work after an exposure[]"); *id.* at 13 (stating "[a]symptomatic, essential employees who are not able to work from home should continue to report to work[]") (emphasis omitted). Plaintiff cites no evidence that the ECSO and County policies for COVID-19 were not followed or were applied on a discriminatory basis in his case. In addition, the County required Plaintiff to use his accrued leave for his March absences, before he applied for FMLA leave, which undermines his claim that the two were causally connected. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended*, (June 6, 2001) (concluding plaintiff failed to establish inference of retaliation, despite "temporal proximity" between protected activity and adverse employment action, because "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity").

Although Plaintiff speculates that the holding center where he worked was understaffed and therefore his absences may have upset his supervisors, he cites no evidence in the record to support his argument, and this allegation is not set forth in his complaint. *See Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 451 (6th Cir. 2020) (concluding that "vague assertions, coupled with a conjectural timeline," are insufficient to "overcome the otherwise largely undisputed point that the employee complaints against [the plaintiff] were an intervening cause between her . . . protected activity and her termination[]"); *Koumantaros v. City Univ. of N.Y.*, 2007 WL 840115, at *9

---

proximity[]" alone was insufficient to establish inference of retaliatory intent where record contained "numerous references about [the plaintiff's] alleged insubordination and performance[]"); *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 336 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir. 2016), *as corrected*, (Jan. 29, 2016) (concluding that, "while the relatively short period of time between the [protected activity and the] termination of plaintiff's employment might suffice to raise the inference of temporal proximity," "intervening [] disturbance" in workplace broke "causal connection[]"); *Taylor v. CSX Transp.*, 418 F. Supp. 2d 1284, 1312 (M.D. Ala. 2006) (determining that plaintiff's "arrest eliminate[d] any causal link between the protected conduct and her suspension without pay and ultimate termination[]" thus plaintiff failed to establish Title VII retaliation claim).

(S.D.N.Y. Mar. 19, 2007) (concluding there was "no genuine issue of fact" regarding whether official policy was "pretextual" because plaintiff cited "no evidence" that official policy was "not actually followed[]" for all students). No rational jury could regard the undisputed events in this case as retaliatory for Plaintiff's exercise of his FMLA rights. *See Hicks*, 593 F.3d at 164 (stating issue at summary judgment stage is "whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive[]") (internal quotation marks and citation omitted). It is thus questionable whether Plaintiff has established retaliatory intent. *See Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment.").

Assuming *arguendo* Plaintiff has established a prima facie case for FMLA retaliation, the County has set forth legitimate, non-discriminatory reasons for the adverse employment actions it took against Plaintiff. Published ECSO and County policies governing employees' exposure to COVID-19 did not permit an essential employee like Plaintiff to receive quarantine pay when secondarily exposed or when asymptomatic and testing negative. Plaintiff was therefore required to use his accrued paid leave for his March 2020 absences. *See* Doc. 18-9 at 6, 13; *see also Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 117 (1st Cir. 2024) ("Uniform application of a facially neutral policy that proscribes unexcused absences is a legitimate, non[retaliatory] reason for [an adverse employment action].") (first alteration in original).

The County has proffered undisputed evidence that Plaintiff was suspended in response to the criminal charges against him rather than because of his application for FMLA leave. *See* Doc. 18-8 at 5 (informing plaintiff he was "being placed on Administrative Leave without pay effective immediately, pending investigation into the facts and circumstances surrounding [his] alleged conduct on October 17, 2020, for which [he was] charged criminally[]"). "[M]isconduct may certainly provide a legitimate and non[retaliatory] reason to terminate an employee." *Ruiz v. County of Rockland*, 609

29

F.3d 486, 492 (2d Cir. 2010) (internal quotation marks omitted). The County has met its burden of proffering legitimate, nonretaliatory business reasons for the adverse employment actions taken against Plaintiff.

A reasonable juror may infer a proffered explanation is pretextual from "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Graziadio*, 817 F.3d at 430 (internal quotation marks and citation omitted). Because proof of an employer's intent often relies on circumstantial evidence, where a plaintiff has established a prima facie case and an employer has proffered a legitimate reason for the employment action, there is generally "a question of fact to be resolved by the factfinder after a trial." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020) (citation omitted). Summary judgment is appropriate "if the employer's non[retaliatory] reason is dispositive and forecloses any issue of material fact." *Id.* (citation omitted).

"[E]ven in such cases of very close temporal proximity, a plaintiff must point to some additional evidence to raise an issue of fact with respect to pretext." *Waltman v. United Servs., Inc.*, 635 F. Supp. 3d 86, 105-06 (D. Conn. 2022) (alteration adopted) (internal quotation marks and citation omitted). Plaintiff has not satisfied his burden of identifying evidence sufficient for a jury to infer the adverse employment actions taken against him were retaliation for his taking FMLA leave or that the County's stated reasons were pretextual. *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (explaining that, once defendant proffers legitimate explanation, "the burden is on the plaintiff to point to evidence that reasonably supports a finding of [retaliation]; otherwise, the defendant is entitled to summary judgment[]"). In light of the absence of such evidence, Plaintiff has failed to establish the essential elements of his retaliation claim.[12]

---

[12] *See Waltman v. United Servs., Inc.*, 635 F. Supp. 3d 86, 107 (D. Conn. 2022) (concluding no reasonable jury could find defendant's investigation into plaintiff's breach of privacy laws and policies was "a pretext to retaliate against her for exercising her FMLA rights[]" where plaintiff presented no evidence complaints that led to investigation were orchestrated by defendant); *Davenport v. City of White Plains*, 2015 WL 5459888, at *10 (S.D.N.Y. July 8, 2015) (granting

For the foregoing reasons, the County's motion for summary judgment is GRANTED with respect to Plaintiff's FMLA claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART the County's motion for summary judgment. (Doc. 18.)

SO ORDERED.

Dated this __18th__ day of July, 2024.

Christina Reiss, District Judge
United States District Court

---

defendant's motion for summary judgment on [Americans with Disabilities Act] and FMLA retaliation claims where plaintiff "identified *no* evidence by which the [c]ourt could conclude the non-retaliatory rationale defendants offer is a pretext[]") (emphasis in original); *cf. Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) (affirming dismissal of Title VII retaliation claim where county terminated plaintiff's employment because she secretly recorded police officials' conversations which "was a felony and a violation of departmental policy[]").